**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| RANDY ROUTH and SHIRLEE ROUTH, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | Civil Action No.  SA-12-CV-244-XR |
| | § | |
| BANK OF AMERICA, N.A., | § | |
| | § | |
| *Defendant*. | § | |
| | § | |

**ORDER**

On this day the Court considered Defendant's motion to dismiss Plaintiffs' amended complaint (Doc. No. 16). For the following reasons, the Court GRANTS THE MOTION IN PART AND DENIES THE MOTION IN PART.  The remaining motions that are pending (docket nos. 20, 25, 27 and 28) are dismissed as moot.

**I. Background**

**A. Factual Background[1]**

Plaintiffs Randy Routh and Shirlee Routh ("Plaintiffs") took a mortgage loan from Countrywide Home Loans in March 2007, secured by a Deed of Trust, for the amount of $204,250.[2] Plaintiffs were subsequently notified by Defendant Bank of America, N.A. ("Defendant") that Defendant had become their lender and was entitled to receive payments. Plaintiffs contend that they began having problems with their mortgage related to Defendant not properly crediting payments and charging fees "not agreed to in the original documents."[3] While it is never specifically stated in the amended complaint, it is implied that at some point Defendant indicated an intent to foreclose on the property.[4] Plaintiffs argue that the bank should be enjoined from foreclosing for several reasons.

For one, Plaintiffs contend that there has been an improper assignment of the deed of trust. Defendant recorded an assignment signed by Jennifer Baker, who claims to be an assistant secretary of Mortgage Electronic Registration Systems, Inc. ("MERS"). Plaintiffs argue "that the evidence will establish that [Jennifer Baker] is not listed by MERS as an assistant secretary and had no authority to sign the assignment on behalf of MERS or the

---

[1] This factual background summary is predicated on facts alleged in Plaintiffs' First Amended Complaint.

[2] The property at issue is located at 7607 Briston Park, San Antonio, Texas.

[3] Am. Compl. ¶ 7. Plaintiffs do not specify the payments that were not credited or the fees that were improperly charged.

[4] Plaintiffs do not indicate whether they defaulted on their loan or whether the loan was accelerated.

original lender Countrywide."[5] Plaintiffs argue that the assignment is void and of no legal effect because the document is "fraudulent and fake," specifically alleging that Defendant "had prepared on its behalf a fraudulent and fake document."[6] Plaintiffs further contend that at the time of assignment the deed of trust was "probably a securitized mortgage that was deposited into a mortgage trust."[7] Plaintiffs allege that the trust was controlled by a pooling and servicing agreement ("PSA"), which had a closing date "believed to be in March of 2007."[8] Plaintiffs contend that "[t]he PSA states that no further transfers of the note should occur after the closing date."[9]

In addition to alleging problems with the assignment of the deed of trust, Plaintiffs also contend that there are several problems relating to the note. Plaintiffs contend that Defendant must own or hold the note in order to foreclose because "[u]nder the contract in question only the Lender can foreclose," and the Lender is defined in part as "any holder of the note who is entitled to receive payment."[10] Plaintiffs therefore argue that Defendant cannot foreclose because "there is no valid chain of title stating who owns the note" and because "Defendant cannot prove that it is the valid owner or holder of the note."[11] Plaintiffs also contend that the assignment of the deed of trust failed to also transfer the note. Plaintiffs further allege that, like the deed of trust, the note was "probably" deposited into the mortgage trust with a closing date "believed" to be in March 2007.

## B. Procedural Background

Plaintiffs filed their original petition in the 407th District Court of Bexar County, Texas, on March 5, 2012, seeking injunctive relief to prevent foreclosure and asserting causes of action for declaratory judgment, violations of the UCC, violations of the Texas Debt Collection Practices Act, violations of the Texas Deceptive Trade Practices Act, and common law fraud. Defendant removed the action to this Court on March 14, 2012, based on diversity jurisdiction. After removal, Defendant filed a motion to dismiss and, in response, Plaintiffs filed an amended complaint. Defendant subsequently filed a motion to dismiss Plaintiffs' amended complaint, which the Court now considers.[12]

In their amended complaint, Plaintiffs seek injunctive relief and assert causes of action for declaratory judgment, violations of the UCC, common law fraud, and quiet title. While Plaintiffs' original petition had asserted causes of action under the Texas Debt Collection Practices Act and Texas Deceptive Trade Practices Act, the amended complaint omits explicit causes of action under either Act. However, the amended complaint does appear to sporadically refer to provisions of both Acts.

Defendant argues that Plaintiffs' amended complaint should be dismissed because Defendant has authority to enforce the deed of trust under Chapter 51 of the Texas Property Code, because Plaintiffs lack standing to contest the assignment of the deed of trust, because

---

[5] Am. Compl. ¶ 4.
[6] Am. Compl. ¶¶ 4, 24.
[7] Am. Compl. ¶ 5.
[8] Am. Compl. ¶ 6.
[9] Am. Compl. ¶ 6.
[10] Am. Compl. ¶¶ 3, 11.
[11] Am. Compl. ¶¶ 9, 10.
[12] The Court held a status conference on May 15, 2012, but did not rule on the pending motion to dismiss.

Plaintiffs' allegations regarding the trust agreement are implausible, and because Plaintiffs lack standing to enforce the terms of the mortgage trust. Defendant further contends that Texas law does not require the mortgage servicer to hold or own the note in order to foreclose, that Plaintiffs have failed to plead sufficient facts to state a claim for fraud, that Plaintiffs' quiet title claim fails because Plaintiffs are not relying on the strength of their own title, and that Plaintiffs are not "consumers" under the Texas Deceptive Trade Practices Act.

## II. Legal Standard

### A. Legal Standard for Deciding a Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While detailed factual allegations are not necessary, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. However, a complaint can survive a motion to dismiss even if actual proof of the facts alleged is "improbable." *Twombly*, 550 U.S. at 556. Although the court must take all of the factual allegations in the complaint as true, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

### B. Documents That May Be Considered

The Supreme Court has held that in deciding a motion to dismiss, a court may consider documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). "The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 388 (5th Cir. 2010). *See also Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 547 (5th Cir. 2010) (quoting *Scanlan v. Texas A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) ("While the court generally must not go outside the pleadings, "the court may consider documents attached to a motion to dismiss that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'"). In attaching documents to a motion to dismiss that are referred to in the plaintiff's complaint and are central to her claim, "the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000). Whether the plaintiff has objected to the court's consideration of documents external to the complaint may be a factor that can be taken into account in determining whether to consider the documents. *Scanlan*, 343 F.3d at 536 (citing *Collins*, 224 F.3d at 498-99) (holding that "[t]he fact that the plaintiffs did not object to, or appeal, the district court's consideration of [documents attached to a motion to dismiss] was central to [the Fifth Circuit's] approval of that practice.").

In this case, both the deed of trust and the assignment document are central to Plaintiffs' claims. Plaintiffs reference the documents, as well as specific provisions of the

documents, in their amended complaint. Defendant attached both the deed of trust and the assignment to Defendant's motion to dismiss Plaintiffs' original complaint and Defendant references the documents in its motion to dismiss Plaintiffs' amended complaint. While the documents are not attached to Plaintiffs' amended complaint or to Defendant's motion to dismiss the amended complaint, Plaintiffs did attach both documents to their response to Defendant's motion to dismiss the amended complaint. Thus, because the documents are central to Plaintiffs' claims, because they are referenced in the amended complaint, and because Plaintiffs appear to be encouraging the Court to consider them, the Court will consider both the deed of trust and the assignment of the deed of trust in ruling on Defendant's motion to dismiss.

## III. Discussion

### A. Quiet Title Claim

Plaintiffs seek to "quiet title related to the fraudulent assignment of the mortgage to Defendant."[13] Plaintiffs contend that they have "superior title" and that "[D]efendant by the fraud committed is not the holder or owner of a valid liens [sic] such that [D]efendant can foreclose the lien on Plaintiffs['] property."[14]

Defendant argues that Plaintiffs' quiet title claim fails because Plaintiffs do not rely upon the strength of their own title. Defendant also argues that the quiet title claim is facially deficient because the claim relies upon challenges to the assignment of the deed of trust and the argument that Defendant must hold the note in order to foreclose. Plaintiffs do not specifically address Defendant's argument in their response,[15] but allegations elsewhere in their response and in their amended complaint do raise relevant counter-arguments that the Court will consider.

### 1. Legal Standard for Establishing a Claim to Quiet Title

"The principal issue in a suit to quiet title is as to the existence of a cloud that equity will remove." *Wright v. Matthews*, 26 S.W.3d 575, 578 (Tex. App.—Beaumont 2000, pet. denied). "A cloud on title exists when an outstanding claim or encumbrance is shown, which on its face, if valid, would affect or impair the title of the owner of the property." *Angell v. Bailey*, 225 S.W.3d 834, 838 n.6 (Tex. App.—El Paso 2007, no pet.). "Any deed, contract, judgment or other instrument not void on its face that purports to convey an interest in or make any charge upon the land of a true owner, the invalidity of which would require proof, is a cloud upon the legal title of the owner." *Hahn v. Love*, 321 S.W.3d 517, 531 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

"The effect of a suit to quiet title is to declare invalid or ineffective the defendant's claim to title." *Gordon v. W. Houston Trees, Ltd.*, 352 S.W.3d 32, 42 (Tex. App.—Houston [1st Dist.] 2011, no pet.). "In other words, the purpose of a suit to quiet title is to invalidate the defendant's claim to title." *Ellis v. Buentello*, No. 01-12-00098-CV, 2012 WL 3528009, at *3

---

[13] Am. Compl. ¶ 25.

[14] Am. Compl. ¶ 25.

[15] In their response to Defendant's motion to dismiss, Plaintiffs merely address Defendant's argument by asserting that "[a]s to the quiet title claim, Plaintiff [sic] has now sufficiently pled superior title which should satisfy the Defendant's complaint." Response ¶ 22.

(Tex. App.—Houston [1st Dist.] Aug. 16, 2012, no pet.). Nonetheless, the plaintiff still "has the burden of supplying the proof necessary to establish his superior equity and right to relief." *Hahn*, 321 S.W.3d at 531.[16]

To prevail on a claim to quiet title, a plaintiff must establish that the defendant: (1) created a hindrance to the plaintiff's title, having the appearance of a better right to title than his own, that (2) appears to be valid on its face, and that (3) for reasons not apparent on its face, is not valid. *Ellis*, 2012 WL 35280009 at * 3.

## 2. Analysis

Here, Plaintiffs' amended complaint states that they took a loan from Countrywide Home Loans and executed a deed of trust. Homeowners who execute a note secured by a deed of trust retain legal title to the property.[17] Defendant claims a right to foreclose on the property pursuant to the deed of trust. This alleged right to foreclose constitutes a "cloud" because it affects Plaintiffs' legal title to the property.[18] Plaintiffs' case is based on the allegation that, although Defendant appears to have a right to foreclose based on the face of the deed of trust and the face of the assignment, Defendant may in fact not be authorized to foreclose for reasons not apparent on the face of either document. Thus, Plaintiffs' attempt to prevent Defendant from foreclosing satisfies the elements of a claim to quiet title.

Defendant nonetheless argues that Plaintiffs' quiet title claim fails because it relies upon faulty legal arguments. The Court will consider each argument underlying Plaintiffs' claim to quiet title.

### a. The Note

Throughout their amended complaint, Plaintiffs contend that Defendant must be the owner or holder of the note in order to foreclose. Plaintiffs argue that Defendant must establish that it is the owner or holder of the note because the deed of trust states that only the "Lender" can foreclose and the "Lender" is defined in part as "any holder of the note entitled to receive payment."[19] Plaintiffs also argue that the current holder of the note is unknown because the assignment was a "simple transfer of the Deed of Trust which on its face fails to transfer to

---

[16] It appears that there is some discord among Texas appellate courts as to whether an action to quiet title relies on the invalidity of the defendant's claim to the property or whether the action relies on the superiority of the plaintiff's claim to the property. *Compare Ellis*, 2012 WL 3528009 at *3 ("A suit to quiet title—also known as a suit to remove cloud from title—relies on the invalidity of the defendant's claim to the property."), *with Washmon v. Strickland*, No. 03-08-00372-CV, 2010 WL 670112, at *1 (Tex. App.—Austin Feb. 26, 2010, no pet.) ("In a suit to quiet title, a plaintiff must establish superior title, proving and recovering on the strength of his own title, not the weakness of the defendant's title."). However, the disagreement makes little practical difference because Texas courts do seem to agree that a plaintiff must both establish title to property and invalidate the defendant's claim to title in order to prevail on a claim to quiet title.

[17] "When a mortgagor executes a deed of trust the legal and equitable estates in the property are severed. The mortgagor retains the legal title and the mortgagee holds the equitable title. Texas has always followed this lien theory of mortgages." *Green v. McKay*, 376 S.W.3d 891, 899 n.9 (Tex. App.—Dallas 2012, pet. filed) (quoting *Flag–Redfern Oil v. Humble Exploration Co.*, 744 S.W.2d 6, 8 (Tex. 1987)).

[18] *See Lighthouse Church of Cloverleaf v. Tex. Bank*, 889 S.W.2d 595, 603 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (stating that "[f]oreclosure transfers title from the debtor to another party").

[19] Am. Compl. ¶¶ 3, 11.

[sic] note."[20] Defendant, on the other hand, argues that it has authority to foreclose pursuant to Chapter 51 of the Texas Property Code regardless of whether it owns or holds the note.

Under Texas law, "[w]hen a debt is memorialized by a note that is secured by a lien, the note and lien constitute separate obligations. Such separate obligations may be litigated in separate lawsuits." *Stephens v. LPP Mortg.*, 316 S.W.3d 742, 747 (Tex. App.—Austin 2010, pet. denied) (internal citations omitted). "For this reason, a lien creditor may pursue foreclosure of a lien against real property under the deed of trust independent of any personal action against the borrower for collection on the note." *Bierwirth v. BAC Home Loans Servicing, L.P.*, No. 03-11-00644-CV, 2012 WL 3793190, at *3 (Tex. App.—Austin Aug. 30, 2012, no pet. h.); *see also Carter v. Gray*, 81 S.W.2d 647, 648 (Tex. 1935) ("It is so well settled as not to be controverted that the right to recover a personal judgment for a debt secured by a lien on land and the right to have a foreclosure of lien are severable, and a plaintiff may elect to seek a personal judgment without foreclosing the lien, and even without a waiver of the lien."). The manner in which a party may administer a non-judicial foreclosure pursuant to a deed of trust is governed by the Texas Property Code. *Lighthouse Church of Cloverleaf v. Tex. Bank*, 889 S.W.2d 595, 603 (Tex. App.—Houston [14th Dist.] 1994, writ denied).

Chapter 51 of the Texas Property Code governs the procedure for conducting a foreclosure sale and authorizes either a mortgagee, or a mortgage servicer acting on behalf of a mortgagee, to sell real property under a "power of sale conferred by a deed of trust." *See* TEX. PROP. CODE. §§ 51.002, 51.0025; *see also* 15 MIKE BAGGETT, TEXAS PRACTICE SERIES: FORECLOSE LAW AND PRACTICE § 2.02 (2d ed. 2001). The Property Code defines a "mortgagee" as "(A) the grantee, beneficiary, owner, or holder of a security instrument; (B) a book entry system,[21] or (C) if the security interest has been assigned of record, the last person to whom the security interest has been assigned of record." TEX. PROP. CODE § 51.0001(4). The statute makes no reference to a requirement that the mortgagee produce the original promissory note and, consequently, there is no dispute that under Texas law production of the original note is not a prerequisite to administering a deed of trust foreclose. *See, e.g.*, *Bierwirth v. BAC Home Loans Servicing, L.P.*, No. 03-11-00644-CV, 2012 WL 3793190, at *3-5 (Tex. App.—Austin Aug. 30, 2012, no pet. h.); *Crear v. JP Morgan Chase Bank N.A.*, No. 10-10875, 2011 WL 1129574, at *1 n.1 (5th Cir. March 28, 2011) (per curiam); *Miller v. Homecomings Financial, LLC*, Civ. A. No. 4:11-CV-04416, 2012 WL 3206237, at *3 (S.D. Tex. Aug. 8, 2012).

However, while courts agree that production of the original note is not necessary to foreclose, district courts are divided as to whether the mortgagee needs to be the owner or holder of the note, or at least authorized to act on behalf of the owner or holder of the note, in order to administer a deed of trust foreclosure. Some courts have relied on the plain language of the Texas Property Code and determined that, since the Code does not explicitly reference the note, a party need not establish any authority whatsoever from the owner or holder of the note prior to foreclosure. *See, e.g.*, *Kramer v. Fed. Nat. Mortg. Ass'n*, No. A-12-CA-276-SS, 2012 WL 3027990 (W.D. Tex. May 15, 2012) ("This Court therefore concludes that,

---

[20] Am. Compl. ¶ 4.
[21] A "book entry system" is defined as "a national book entry system for registering a beneficial interest in a security instrument that acts as a nominee for the grantee, beneficiary, owner, or holder of the security instrument and its successors and assigns." TEX. PROP. CODE § 51.0001(1).

regardless of its relationship to the promissory note, MERS, and later BAC, had the authority to foreclose under the associated deed of trust."). This argument relies on the theory that promissory notes and deeds of trust are "viewed and treated as distinct obligations under modern Texas law" and is buttressed by the fact that effective January 1, 2004 the Texas Legislature removed from section 51.002 of the Property Code all references to "holder" of the debt, replacing the term "holder" with "mortgage servicer." *Kramer*, 2012 WL 3027990 at *7; 2003 Tex. Sess. Law Ch. 554, H.B. 1493, 78th Leg. On the other hand, some courts have found that "inherent in the procedural steps outlined in the Texas Property Code is the assumption that whatever entity qualifies as a 'mortgagee' either owns the note or is serving as an agent for the owner or holder of the note." *McCarthy v. Bank of Am., NA*, No. 4:11-CV-356-A, 2011 WL 6754064, at *4 (N.D. Tex. Dec. 22, 2011). This argument relies on the theory that the sole purpose of the deed of trust is to secure repayment for the note, and without the note the deed of trust itself could never experience default. *See id.* at *3-4; RESTATEMENT (THIRD) OF PROPERTY: MORTGAGES §5.4 ("A mortgage may be enforced only by, or in behalf of, a person who is entitled to enforce the obligation the mortgage secures."). This Court has been persuaded by the latter theory. *See Millet v. JP Morgan Chase, N.A.*, No. SA-11-CV-1031-XR, 2012 WL 1029497 (W.D. Tex. March 26, 2012).

In this case, however, the distinction between the two theories is irrelevant because the documents central to Plaintiffs' claims establish that Defendant both satisfies the express requirements of the Texas Property Code and is also authorized to act on behalf of the owner or holder of the note.

While Plaintiffs argue that the deed of trust secures payment only to the lender,[22] and thus argue that only the lender can foreclose, Plaintiffs fail to mention that the deed of trust also expressly grants MERS authority to act on behalf of the lender and the lender's successors and assigns. The deed of trust states as follows:

> The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. . . . .
>
> . . . .
>
> . . . Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, *MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender* including, but not limited to, releasing and canceling this Security Instrument.[23]

Texas courts have held that provisions in a deed of trust providing for the use of MERS are enforceable to the extent of the terms set forth in the document. *Bierwirth v. BAC Home Loans Servicing, L.P.*, No. 03-11-00644-CV, 2012 WL 3793190, at *5 (Tex. App.—Austin Aug. 30, 2012); *Athey v. Mortg. Elec. Registration Servicing, L.P.*, 314 S.W.3d 161,

---

[22] The deed of trust defines the lender in part as "any holder of the Note who is entitled to receive payments under the Note." *See* Doc. No. 17-1.

[23] *See* Doc. No. 17-1 (emphasis added).

166 (Tex. App.—Eastland 2010, pet. denied). Thus, pursuant to the deed of trust, MERS has the authority to act on behalf of the lender. Accordingly, as long as MERS validly assigned its interest to Defendant, there is no question that Defendant is properly authorized to foreclose on behalf of the holder or owner of the note in this case.

### b. The Assignment

On its face, the assignment appears to validly convey all of MERS's interest in the deed of trust to Defendant. The assignment states:

> For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") . . . does hereby grant, sell, assign, transfer and convey unto BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP . . . all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.[24]

The assignment is signed by "Jennifer Baker: Assistant Secretary" on behalf of "Mortgage Electronic Registration Systems, Inc." and is also notarized.

The assignment establishes that the deed of trust and the note were transferred from the original lender—MERS, as nominee for Countrywide—to Defendant Bank of America.[25] There are no gaps in the chain of title. Nor have Plaintiffs alleged that Defendant subsequently transferred the deed of trust. Thus, Defendant is the party entitled to enforce the obligations on the note and to foreclose the deed of trust. Further, because Defendant is the last entity to whom the deed of trust has been assigned of record, Defendant qualifies as a "mortgagee" under the Texas Property Code. *See* § 51.0001(4)(C).

However, although the face of the assignment appears to confer Defendant authority to foreclose, Plaintiffs allege that the assignment is nonetheless invalid for essentially two reasons. First, Plaintiffs contend that the assignment was unauthorized and that Defendant "had prepared on its behalf a fraudulent and fake document."[26] Second, Plaintiffs allege that the assignment violated the terms of a pooling and servicing agreement.

### i. Standing to Challenge the Assignment

Defendant argues that Plaintiffs lack standing to challenge the assignment, regardless of the ground, because "[w]ell-settled principles of contract law dictate that a plaintiff may not enforce a contract to which he is not a party" and that, similarly, a person who is not a party to an assignment lacks standing to contest it.[27] Defendant cites numerous federal district courts that have embraced this argument and found that a mortgagor lacks standing to challenge an

---

[24] *See* Doc. No. 17-2.

[25] Contrary to Plaintiffs' contention, the assignment specifically transfers the note as well as the deed of trust. Thus, Plaintiffs' allegation that "the assignment is a simple transfer of the Deed of Trust which on its face fails to transfer to [sic] note in compliance with the Deed of Trust" appears to be plainly incorrect.

[26] Am. Compl. ¶¶ 4, 24.

[27] Mot. Dismiss at 9.

assignment of the mortgage between mortgagees.[28] None of the district courts that Defendant cites, however, rely on any Texas state court case or statute.

"Texas has long followed the common law rule which permits a debtor to assert against an assignee any ground that renders the assignment void or invalid." *Miller v. Homecomings Financial, LLC*, No. 4:11-CV-04416, 2012 WL 3206237, at *5 (S.D. Tex. Aug. 8, 2012); *see also Tri–Cities Constr., Inc. v. Am. Nat. Ins. Co.*, 523 S.W.2d 426, 430 (Tex. Civ. App.—Houston [1st Dist.] 1975, no writ); *Glass v. Carpenter*, 330 S.W.2d 530, 537 (Tex. Civ. App.—San Antonio 1959, writ ref'd n.r.e.); *see also Slaughter v. Qualls*, 162 S.W.2d 671, 674 (Tex. 1942) (a void deed passes no title, but a voidable deed passes title subject to the right to have it set aside). As stated in *Glass*:

> The law is settled that the obligors of a claim may defend a suit brought thereon on any ground which renders the assignment void, but may not defend on any ground which renders the assignment voidable only, because the only interest or right which an obligor of a claim has in the instrument of assignment is to insure himself that he will not have to pay the same claim twice.

330 S.W.2d at 537. At least three federal district courts have found that this rule may permit a mortgagor-plaintiff to challenge a mortgage assignment. *See Miller*, 2012 WL 3206237 (mortgagor had standing to challenge assignments where there were gaps in the chain of title); *Puente v. CitiMortgage, Inc.*, No. 3:11-CV-2509-N, 2012 WL 4335997 (N.D. Tex. Aug. 29, 2012) (the court could not determine that the plaintiffs had standing because it was unclear from the complaint whether the plaintiffs were alleging that the assignment was void or merely voidable); *Rice v. Bank of New York*, No. 4:11-CV-04220, 2012 WL 3685981 (S.D. Tex. Aug. 24, 2012) (motion to dismiss denied, but motion for more definite statement granted where petition did not identify where the gap in the chain of title occurred).

Nonetheless, there remains disagreement as to whether this rule permits a mortgage debtor to challenge an assignment between mortgagees. In *Kramer v. Federal National Mortgage Ass'n*, No. A-12-CA-279-SS, 2012 WL 3027990 (W.D. Tex. May 15, 2012), the court found that the rule did not apply and, as a result, held that a mortgage debtor lacked standing to challenge an allegedly unauthorized assignment. The court listed two reasons for its holding. First, the court reasoned that the defendants had not sued the mortgage debtor at all and, even if they had, the suit would have been on the deed of trust rather than the note. Second, the court reasoned that there was "no suggestion" that the mortgage debtor was "being put in a position where he [would] have to pay the same claim twice." The court therefore concluded:

> [I]f an error was indeed committed, and the wrong entity received the foreclosure sale proceeds, that is a matter properly resolved between the various parties who have a legitimate claim to the property; and that [the debtor], whose legal interest

---

[28] *See, e.g., James v. Wells Fargo Bank, N.A.*, No. 3:11-CV-2228-B, 2012 WL 778510, at *2 (N.D. Tex. Mar. 12, 2012); *Salmeron v. CitiMortgage, Inc.*, No. 3:11-CV-1398-M-BK, 2012 WL 760110, at *3 (N.D. Tex. Feb. 3, 2012); *McAllister v. BAC Home Loans Servicing, LP*, No. 4:10-CV-504, 2011 WL 2200672, at *5 (E.D. Tex. Apr. 28, 2011); *Schieroni v. Deutsche Bank Nat'l Trust Co.*, No. H-10-663, 2011 WL 3652194, at *6 (S.D. Tex. August 18, 2011).

in the property was forfeited when he defaulted on his loan obligations and failed
to make timely cure, cannot challenge those transactions here.

*Id.* at 5.

To determine whether Plaintiffs have standing to contest the validity of the assignment
in this case, the Court must consider the nature of Plaintiffs' challenges.

### ii. Plaintiffs' Argument that the Assignment was Unauthorized and Fake

In their amended complaint, Plaintiffs allege that Jennifer Baker is not an assistant
secretary of MERS and had no authority to execute the assignment. Plaintiffs further allege
that Defendant "had prepared on its behalf a fraudulent and fake document."[29] In their
response, Plaintiffs reinforce their allegations by plainly stating that "[t]he assignment that is
the subject of this suit is 'fake.'"[30]

It is somewhat unclear whether, under Texas law, a contract entered into without
authorization would be void or voidable. Because an unauthorized contract would not bind the
principal, no rights would be created at all, which would suggest that the contract would be
void. *See Suarez v. Johnson*, 35 S.W.3d 268, 272–73 (Tex. App.—Houston [14th Dist.] 2000,
no pet.) ("The law does not presume agency. Absent actual or apparent authority, an agent
cannot bind a principal." (internal citations omitted)); RESTATEMENT (THIRD) OF AGENCY §
4.02 cmt. b ("[r]atification creates claims not otherwise present"). Federal courts in other
jurisdictions, however, have found that the lack of authority to enter into a contract may create
merely a voidable contract, not a void contract. Regardless, Plaintiffs in this case have alleged
more than mere lack of authorization; rather, they have alleged that Defendant prepared a fake
document. A forged deed would be void. *Lighthouse Church of Cloverleaf v. Tex. Bank*, 889
S.W.2d 595, 603 (Tex. App.—Houston [14th Dist.] 1994, writ denied).[31] Thus, if the
assignment of the note and deed of trust to Defendant were truly unauthorized and fake, as
Plaintiffs allege, then the original lender or MERS may not be bound by the assignment. It
follows that, theoretically, Plaintiffs could be exposed to the risk of the lender or MERS, or
their assigns, later coming forth and attempting to collect on the note, claiming that the
foreclosure sale by Defendant had not been authorized and consequently did not discharge the
debt. Because of this theoretical risk of double liability, Plaintiffs do have standing to
challenge whether the assignment was invalid due to forgery or lack of authorization.

The Court recognizes that actual proof that the assignment was unauthorized or fake
seems unlikely, especially since Plaintiffs do not suggest that another party claims to own the
mortgage, Plaintiffs do not offer any reason why they believe MERS did not authorize this
particular assignment, and Plaintiffs do not point to any indication from the face of the
assignment suggesting that it may be fake. However, when considering a motion to dismiss,
the Court must accept the pleaded facts as true, regardless of whether proof of the alleged facts
is "improbable." It may ultimately be true that MERS did indeed authorize the assignment,
and it could also be true that, even if the assignment were unauthorized, MERS later ratified
the assignment. However, these are questions of fact and cannot be considered at this time.

---

[29] Am. Compl. ¶ 24.
[30] Response ¶ 17.
[31] "Forgery" is defined as "[t]he act of fraudulently making a false document or altering a real one to be used as if
genuine." BLACK'S LAW DICTIONARY (9th ed. 2009).

The Court wishes to remind Plaintiffs' counsel of his duty under Rule 11: "By presenting to the court a pleading . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . (3) that the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." FED. R. CIV. P. 11(b). If it is determined that MERS did authorize the assignment, Plaintiffs' counsel should be cautious of continuing to prosecute existing lawsuits, and bringing future lawsuits, predicated on the same claim without additional indicia of wrongdoing.

### iii. *Plaintiffs' Argument that the Assignment Violated the Pooling and Servicing Agreement*

In their amended complaint, Plaintiffs make the following allegations related to a transfer in violation of the pooling and servicing agreement:

> 5. . . . [D]uring the time when this note and mortgage were given and then assigned this note and mortgage was [sic] probably a securitized mortgage that was deposited into a mortgage trust.

> 6. The trust is controlled by a pooling and servicing agreement (PSA). Under the PSA all mortgages that were supposed to become part of the trust had to be placed into the trust prior to the closing date. The closing date under this PSA is believed to be in March of 2007. The PSA states that no further transfers of the note should occur after the closing date.

> 21. . . . Defendant Bank has no right to enforce the instrument due to the fraud and illegal acts of transferring the note and deed of trust after the closing date of the PSA . . . .

The amended complaint does not allege that an assignment after the closing date would have been void or even prohibited—rather, the term "should" suggests that the language of the pooling and servicing agreement may have been precatory. Plaintiffs cite no legal authority suggesting that a transfer after the closing date of the pooling and servicing agreement would have been void and the Court has found none. Accordingly, Plaintiffs' amended complaint fails to allege facts that would allow the Court to draw the reasonable inference that a transfer in violation of the pooling and servicing agreement would have been void.

Plaintiffs' response does not provide any clarification. In their response, Plaintiffs contend the following:

> 10. Plaintiff's [sic] mortgage loan was securitized and is controlled by a Pooling and Servicing Agreement (PSA). The bank would like to assert that Plaintiff [sic] has no standing to challenge the PSA or any assignments. Plaintiff [sic] is a party to and signed the Note and Deed of Trust and as such Plaintiff's [sic] has obligations and rights under these agreements. . . . Plaintiff [sic] has come to learn that his [sic] Note and Deed of Trust was [sic] placed with thousands of loans into

> the pool. The transfer of his Note out of the pool is subject to the PSA and a custodial agreement. Plaintiff has come to learn that in order to get his mortgage out of the pool, the "trustee" of the pool must follow the procedures and ask for his Note.

Although Plaintiffs allege that the mortgage loan was securitized and subject to a pooling and servicing agreement, Plaintiffs still do not allege that the mortgage was transferred in violation of the pooling and servicing agreement, let alone provide factual allegations suggesting that such a transfer would have somehow been void. Because Plaintiffs' response offers no additional factual allegations or legal authority suggesting that an assignment in violation of the pooling and servicing agreement would have been void, and because Plaintiffs have already had the chance to amend their complaint, the Court finds that Plaintiffs have pleaded their best case and that further amendment would serve no useful purpose. Thus, Plaintiffs' theory that the assignment was invalid because it violated the pooling and servicing agreement fails as a matter of law, and the Court finds that allowing Plaintiffs to file an amended complaint would be futile.

In sum, Plaintiffs' claim to quiet title survives Defendant's motion to dismiss because, if the assignment was not authorized by MERS and Defendant did prepare a fake assignment, as Plaintiffs allege, Defendant's attempt to foreclose would constitute a cloud on Plaintiffs' title to their property. Accordingly, Defendant's motion to dismiss Plaintiffs' claim to quiet title is denied.

**B. Fraud**

In Texas, the elements of common law fraud are:

> (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

*Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011). "Failing to disclose information is equivalent to a false representation only when particular circumstances impose a duty on a party to speak, and the party deliberately remains silent." *In re Int'l Profit Assocs., Inc.*, 274 S.W.3d 672, 678 (Tex. 2009).

"State law fraud claims are subject to the heightened pleading requirements of Rule 9(b)." *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 550-51 (5th Cir. 2010). "To plead fraud adequately, the plaintiff must 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" *Id.* at 551 (quoting *ABC Arbitrage v. Tchuruk*, 291 F.3d 336, 350 (5th Cir.2002)). "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out.'" *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010) (quoting *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003)).

Defendant argues that Plaintiffs have failed to state a claim for fraud because the alleged "representation" is an assignment from MERS, not from Defendant. Defendant also argues that any statement concerning the assignment would not have been false because Plaintiffs have not alleged facts sufficient to show that MERS did not intend to assign the deed of trust to Defendant. Plaintiffs respond by contending that fraud claims need not be proven in the pleadings and by conclusively asserting that Plaintiffs have "sufficiently fulfilled" the requisite pleading requirements.

Upon consideration of Plaintiffs' amended complaint, it appears that the only factual allegations concerning a "representation" made by Defendant are: 1) that Defendant "made a representation to Plaintiffs that the loan had been assigned" to it; 2) that Defendant "filed . . . documents thereby representing that the documents were legitimate"; and 3) that Defendant "used [an allegedly fake] document in an effort to represent to the Plaintiffs that they [sic] were the holder of the note and deed of trust."[32] Plaintiffs also appear to allege that Defendant failed to disclose "material facts including the fact that Defendant knew the documents were fraudulent."[33]

Not one of these pleading statements alleges a "representation" with sufficient particularity to satisfy the heightened pleading standard of Rule 9(b). Plaintiffs do not identify any acting individuals or indicate when or where the alleged representations were made.[34] Moreover, not only have Plaintiffs failed to plead particular facts describing the alleged representation, but Plaintiffs have also failed to allege any facts indicating whether Defendant knew the alleged representations were false at the time they were made or whether Defendant intended for Plaintiffs to rely on the representations. Rather, the amended complaint merely provides conclusory statements asserting that these elements have been satisfied.[35] Thus, the Court finds that Plaintiffs have failed to alleged facts sufficient to state a claim for fraud. Defendant's motion to dismiss Plaintiffs' fraud claim is therefore granted.

### C. UCC Violations

In their amended complaint, Plaintiffs allege that Defendant "cannot prove all of the . . . elements of holder status" and cite sections 3.301, 3.309, and 3.418(d) of the Texas Business and Commerce Code in support of their claim.[36] Plaintiffs also allege that "[p]ursuant to §3.203 of the Texas Business and Commerce Code, Defendant Bank has no right to enforce

---

[32] Am. Compl. ¶¶ 23-24.

[33] Am. Compl. ¶ 23.

[34] While Plaintiffs do allege that an individual named Jennifer Baker was instructed to sign the document, Plaintiffs fail to allege whether Ms. Baker "caused" the document to be recorded herself or whether Ms. Baker represented the document to Plaintiffs. A review of the amended complaint suggests that she did not do either. *See, e.g.*, Am. Compl. ¶ 4 ("*Defendant* has now recorded an assignment that is signed by a Jennifer Baker.") (emphasis added).

[35] *See* Am. Compl. ¶ 23. Plaintiffs state: "When the representations were made by all defendants and [sic] they knew the representations were false." Plaintiffs also state: "All defendants [sic] made the representations about the assignments made [sic] with the intent that the Plaintiffs act on it."

[36] *See* Am. Compl. ¶ 20. Texas has adopted the Uniform Commercial Code and codified it at Title 1 of the Texas Business and Commerce Code. Section 3.301 of the Business and Commerce Code governs what individuals are entitled to enforce an instrument, section 3.309 governs when a person not in possession of an instrument may be entitled to enforce the instrument, and section 3.418(d) concerns payment or acceptance of an instrument by mistake.

the instrument due to the fraud and illegal acts of transferring the note and deed of trust."[37] Finally, Plaintiffs allege that pursuant to sections 3.301 and 3.309, Defendant "is not the holder or owner of the note and deed or [sic] trust and cannot establish the chain such that Defendant can prove that Defendant bank has the right to foreclose."[38]

Rather than constituting an independent cause of action, the Court finds that Plaintiffs' references to the UCC are merely offered in connection with Plaintiffs' claim to quiet title and their argument that Defendant must be the owner or holder of the note prior to administering a deed of trust foreclosure. The Court has disposed of Plaintiffs' argument above. Defendant's motion to dismiss Plaintiffs' alleged causes of action under the UCC is therefore granted.

### D. Debt Collection Act and Deceptive Trade Practices Act Claims

While Plaintiffs' original petition explicitly alleged causes of action under the Texas Debt Collection Act ("DCA") and Texas Deceptive Trade Practices Act ("DTPA"), Plaintiffs' amended complaint has omitted explicit allegations of causes of action under either Act. However, the amended complaint still appears to contain sporadic references to both Acts.

Under the heading "Causation; damages," Plaintiffs assert that Defendant is "liable for [sic] $100 fine pursuant to Section 392.403(c) and is liable for damages to Plaintiffs [sic] credit."[39] While Plaintiffs do not identify the relevant Code, the Court assumes that Plaintiffs are referring to Chapter 392 of the Texas Finance Code, which codifies the Debt Collection Act. Section 392.403(c) of the Finance Code provides for attorneys' fees for the *defendant* if an action is brought in bad faith.[40] This provision does not afford Plaintiffs a remedy.

Plaintiffs also refer to sections 17.45(9), 17.45(13), and 17.50(b)(1) of the "DCPA." However, the Texas Debt Collection Act is codified at Chapter 392 of the Texas Finance Code and does not include those sections. The Court assumes that Plaintiffs are referring to the Deceptive Trade Practices Act and the relevant sections of the Texas Business and Commerce Code. Sections 17.45(9) and 17.45(13) of the Business and Commerce Code define "knowingly" and "intentionally" under the DTPA. Section 17.50(b)(1) enumerates the types of relief a consumer may obtain if he prevails in a suit under 17.50(a). Section 17.50(b) does not afford Plaintiffs a cause of action itself. Thus, Plaintiffs have failed to state a claim under either the DCA or DTPA. Defendant's motion to dismiss Plaintiffs' claims under the DCA and DTPA is therefore granted.

### E. Declaratory Judgment

Plaintiffs allege causes of action for declaratory judgment pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code and pursuant to 28 U.S.C. sections 2201 and 2202. Defendant argues that Plaintiffs' request for declaratory relief should fail along with Plaintiffs' other causes of action and also requests that the Court dismiss Plaintiffs' claim for

---

[37] Am. Compl. ¶ 21. Section 3.203 of the Business and Commerce Code governs the transfer of instruments and the rights acquired by transfer.

[38] Am. Compl. ¶ 22.

[39] Am. Compl. ¶ 28.

[40] Specifically, section 392.403(c) of the Finance Code states: "On a finding by a court that an action under this section was brought in bad faith or for purposes of harassment, the court shall award the defendant attorney's fees reasonably related to the work performed and costs."

declaratory relief as "redundant" because the declaratory relief sought "would add nothing to this suit."[41] Declaratory relief is a procedural device for granting a remedy and does not create any substantive rights or causes of action. *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240 (1937); *Sid Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd.*, 99 F.3d 746, 752 n.3 (5th Cir. 1996). Determining whether to award declaratory relief is a matter of district court discretion. *Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194 (5th Cir. 1991). In this case, the Court notes that the Federal Declaratory Judgment Act applies rather than the Texas Declaratory Judgment Act because both acts are procedural and federal courts apply their own procedural rules. *See Bloss v. Moore*, 269 F. App'x 446, 449 (5th. Cir. 2008) (citing *Camacho v. Tex. Workforce Comm'n*, 445 F.3d 407, 413 (5th Cir. 2006)).

Because at least one of Plaintiffs' claims has survived Defendant's motion to dismiss, Plaintiffs' request for declaratory relief is supported by a live cause of action. Whether an award of declaratory relief is redundant will be determined when the Court considers Plaintiffs' remaining cause of action.

## IV. Conclusion

In light of the foregoing analysis, the Court finds that Defendant's motion to dismiss (Doc. No. 16) should be, and is hereby, GRANTED IN PART AND DENIED IN PART.

Defendant's motion to dismiss is GRANTED with respect to Plaintiffs' causes of action for fraud, violations of the UCC, and violations of the Debt Collection Act and Deceptive Trade Practices Act. Plaintiffs' causes of action for fraud, violations of the UCC, and violations of the Debt Collection Act and Deceptive Trade Practices Act are therefore DISMISSED.

Defendant's motion to dismiss is DENIED with respect to Plaintiffs' quiet title claim.

The sole issue remaining in this case is whether the assignment of the note and deed of trust is valid. If Defendant can produce uncontroverted evidence demonstrating that MERS authorized or ratified the assignment, there will be no need for further discovery or proceedings in this case.

Accordingly, Defendant should file a motion for summary judgment and attach evidence demonstrating that MERS authorized or ratified the assignment of the note and deed of trust to Defendant. Plaintiffs shall have an opportunity to respond. If Plaintiffs do not produce any controverting evidence, this case will be dismissed.

In light of the Court's ruling, it is ORDERED that all remaining scheduling order deadlines, including trial, are hereby VACATED. The parties are ordered to confer and propose to the Court a new scheduling order.

In light of the above, the Defendant's motion for summary judgment (docket no. 25) is dismissed as moot.  Defendant's motion to exclude Plaintiffs' experts (docket no. 20) is dismissed as moot.  Should Plaintiffs attempt to rely upon these experts in light of the above rulings, the Defendant may file a new motion to strike.

Plaintiffs' motion to continue (docket no. 27) and motion to compel are dismissed as moot.

---

[41] Mot. Dismiss at 16-17.

SIGNED this 4th day of February, 2013.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE